# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| **In re** | **CHAPTER 11** |
| **BRAY & GILLESPIE MANAGEMENT, LLC, et al** | **CASE NO.: 3:08-bk-05473-JAF** |
| Debtors. _____ / | Jointly-Administered with cases no. 3:08-bk-05474 through 3:08-bk-05551 |
| **APPLICABLE DEBTOR:** | |
| **BRAY & GILLESPIE XXIV, LLC** (Case No. 3:08-BK-05528-JAF) _____ / | |

### DEBTOR'S RESPONSE TO GCCFC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND INCORPORATED MEMORANDUM OF LAW

**BRAY & GILLESPIE XXIV, LLC** ("B&G XXIV"), and all of its affiliates and related entities, which are also debtors and debtors-in-possession (collectively, hereinafter referred to as the "Debtors"), hereby file this response, pursuant to 11 U.S.C. §362(d), to LNR Partners, Inc. as special servicer for Bank of America, N.A. as successor by merger to LaSalle Bank National Association, as trustee for the registered holders of Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2006-GG7, Commercial Mortgage Pass-Through Certificates, Series 2006-GG7 ("GCCFC") Motion for Relief from the Automatic Stay ("Stay Relief Motion"), filed with the Court on January 9, 2009 (Doc. No. 682), and in support therefore states as follows:

1. On September 12, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"). The Debtors continue to operate their respective businesses

and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested or appointed in any of the Debtors' chapter 11 cases.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. In the Stay Relief Motion, GCCFC requests relief from the automatic stay to foreclose on the real property known as the Palm Plaza Hotel & Beachside Inn located 3301 and 3309 S. Atlantic Avenue in Daytona Beach, Florida (collectively, the "Collateral"). The Stay Relief Motion alleges the following as "cause" to lift the automatic stay: (i) the Debtors have allowed the Collateral "to languish while diverting funds that should have been allocate to maintenance and capital expenditures;" (ii) the Debtors have no equity in the Collateral; (iii) the Debtors cannot propose a feasible plan within a reasonable time frame; and (iv) GCCFC will not vote for any proposed plan of reorganization which would impair its claim, and GCCFC cannot be "crammed-down".

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

    **A.  Procedural Background**

4. Pursuant to this Court's order dated, October 1, 2008, the Bankruptcy Cases have been consolidated for procedural purposes and are being jointly administered by the Court. (Doc. No. 48).

5. On January 9, 2009, the Debtors filed a Joint Disclosure Statement ("Disclosure Statement") pursuant to the requirements of §1125 of the Bankruptcy Code and a Joint Plan

2

of Reorganization ("Plan"), pursuant to Chapter 11 of the Bankruptcy Code. (Doc. Nos. 690 and 691).

6. Pursuant to 11 U.S.C. §1121, the exclusivity period of the Debtors to file a plan of reorganization has been extended until March 10, 2009. The Court has scheduled the Disclosure Statement hearing for March 23, 2009. On February 10, 2009, the Debtors filed a motion, pursuant to 11 U.S.C. §1121(d), to increase the 180-day period (the "Exclusivity Motion") (Doc. No. 883). The Exclusivity Motion has been set for hearing on March 11, 2009.

7. The Plan contemplates the substantive consolidation of the Bankruptcy Cases into a single Case, as such, the Plan contains only one (1) Class of Unsecured Claims. The Debtors anticipate that the Confirmation Order would provide that on the Confirmation Date: (i) all assets and all proceeds thereof, and all liabilities of the five reorganized debtors (collectively, the "Reorganized Debtors") would be treated as though the assets and liabilities were merged into the respective Reorganized Debtors (B&G Liquidating Trust, Holding Co., Management Co., Arbor Co., LNR Co., Land Co., and Hotel Co.); (ii) all Allowed Claims and Claims among the Reorganized Debtors (Intercompany Claims) would receive no distribution under the Plan; (iii) any obligation of any Reorganized Debtor, and all guarantees thereof executed by one or more of the Reorganized Debtors, and any Claims in a case of a proponent hereof, filed or to be filed in connection with any such obligation and guarantee would be deemed one Claim against the respective Reorganized Debtor; (iv) each and every Claim filed in the individual Chapter 11 Case of any of the Reorganized Debtors would be deemed filed against the respective Reorganized Debtor; and (v) for

purposes of determining the availability of the right of set-off under Section 553 of the Bankruptcy Code, the respective Reorganized Debtor would be treated for purposes of the Plan as one entity so that, subject to the other provisions of Section 553 of the Bankruptcy Code, debts due to any of the respective Reorganized Debtors would be capably of being setoff against the debts of any of the Reorganized Debtors.

8. On January 26, 2009, the Debtors filed a Motion to Substantively Consolidate Chapter 11 Cases and Incorporated Memorandum of Law ("Substantive Consolidation Motion") (Doc. No. 793). The Court has scheduled the Substantive Consolidation Motion for final evidentiary hearing on March 20, 2009 at 9:30 a.m. On January 26, 2009, the Debtors filed a motion to compel mediation of the Substantive Consolidation Motion. (Doc. No. 794). On February 25, 2009, the Court entered an order directing the Substantive Consolidation Motion to mediation. (Doc. No. 971). The mediation is currently scheduled for March 10, 2009.

9. Notwithstanding the treatment provided for in the Plan, the Debtors assert that the Bankruptcy Cases can be consolidated into a single Reorganized Debtor, rather than the six aforementioned Reorganized Debtors. However, as an accommodation to those Secured Lenders whose loan is part of a "collateralized debt obligation" ("CDO"), the Debtors are willing to separately consolidate the loans on the Debtors' real property by lender, if the lender votes for the Plan and otherwise supports substantive consolidation of the Debtors.

10. In addition to the continuation of the exclusivity period, the filing of the Plan and the Substantive Consolidation Motion, the Debtors have reached agreements on the final use of cash collateral with the following secured lenders through May 29, 2009: (i)

4

Wachovia Bank; (ii) Arbor Realty Participation LLC; (iii) RAIT CRE CDO I, Ltd.; (iv) Marshall Investment Corporation; (v) Bank First; (vi) Wells Fargo Bank, N.A.; (vii) Federal Trust Bank; (viii) ING Clarion, as special servicer for Wells Fargo Bank, N.A., as Trustee for Registered Holders of Goldman Sachs Securities Corporation II, Commercial Mortgage Pass-Through Certificates, Series 2006-GG6; (ix) First National Bank of Pennsylvania; and (x) The Park Avenue Bank.

### B. The Debtors' Business

11. Since 1988, the Debtors have been engaged in the business of renovating and redeveloping resort properties along Florida's Atlantic coastline. As of the Petition Date, the Debtors collectively own over one mile of ocean property from Daytona Beach to Ormond Beach. The property consists of numerous hotels, residential and commercial property.

12. Bray & Gillespie Management, L.L.C. ("B&G Management") operates a total of twenty-four (24) hotels located in Volusia County which are either affiliates or related companies. Additionally, B&G Management, manages seven (7) other entities (related or affiliated) which own income producing property. Finally, certain affiliated or related parties own twenty-six (26) other non-income producing parcels or real property located throughout Volusia County.

13. Overall, Debtor and the affiliated and related entities are the largest land owner in Volusia County and employ approximately 560 people.

14. Over the past ten years, the Debtors have assembled a portfolio of direct oceanfront property, which arguably contains one of the largest oceanfront as-of-right

developments in the United States. Collectively, the portfolio provides the opportunity to develop more than 18 million plus square feet of gross building area directly on more than 1.65 miles of oceanfront land and .37 miles of land across the street from the ocean. The portfolio currently includes 24 operating hotels, and a total of 61properties, which sit on approximately two miles of direct oceanfront property.

15. B&G XXIV, d/b/a the Palm Plaza Oceanfront Resort and the Beachside Plaza, is a Florida limited liability company. The Palm Plaza Oceanfront Resort is located at 3301 S. Atlantic Avenue, Daytona Beach Shores, Florida ("Palm Plaza"). The Palm Plaza is a twelve-story boutique hotel which offers 84 standard guestrooms and 14 suites. The hotel has an outdoor swimming pool, laundry facilities, and a fitness center. The Palm Plaza overlooks the Atlantic Ocean and is nestled in the heart of Daytona Beach. The Beachside Plaza Resort is located at 3309 S. Atlantic Avenue, Daytona Beach, Florida ("Beachside"). The Beachside offers 30 guestrooms and three suites with balconies. All rooms feature a full kitchen with a microwave and a refrigerator. The hotel provides an outdoor swimming pool, a children's pol, a sap tub, and direct access to the beach.

## II. ARGUMENT AND MEMORANDUM OF LAW

16. Under 11 U.S.C. §362(d)(2) a court shall grant relief from the automatic stay if a creditor shows that a debtor **lacks equity** in the property and debtor fails to show that the property is **necessary for an effective reorganization**. If a party moving for relief from stay under §362(d)(2) shows that a debtor has no equity in the collateral at issue, the burden then shifts to a debtor to show that the collateral is necessary to an effective reorganization. See 11 U.S.C. §362(g).

6

17. However, "where a creditor seeks to convince a court to dismiss a case on the grounds that continuation of the statutory confirmation process is futile, **the burden rests on a moving creditor to show futility by a preponderance. It is the moving creditor that possesses the evidence of the alleged inevitable rejection of a plan-generally, the size of its claim and its resolve to vote against any plan… commonsense dictates that a debtor should not be forced to prove that a creditor's statement of intent to vote against a plan is false.**" In re Annicott Excellence, LLC, 258 B.R. 278, 283-284 (Bankr. M.D. Fla. 2001). Accordingly, the moving creditor needs to prove by a preponderance of the evidence that it could block confirmation of any plan of reorganization. See Id., at 284-285.

18. The appropriate test for determining whether collateral is "necessary to an effective reorganization" is (i) whether the collateral is, in fact, necessary to the debtor's reorganization efforts; and (ii) there is a reasonable possibility of a successful reorganization within a reasonable time. Farm Credit of Central Florida, ACA v. Polk, 160 B.R. 870, 874 (M.D. Fla. 1993).

19. There are two distinct lines of authority which have been employed by courts in determining whether the collateral is necessary to the debtors' reorganization efforts. Under the liberal approach, property is necessary to a debtor's efforts at reorganization whenever it will contribute to it or where it has a role to play in those efforts. In re Greiman, 45 B.R. 574, 580 (Bankr. N.D. Iowa 1984); In re Saypol, 31 B.R. 796, 803 (Bankr. S.D.N.Y. 1983); LaJolla Mortgage Fund v. Rancho el Cajon Associates, 18 B.R. 283, 291 (Bankr. S.D. Cal. 1982). A separate line of authority adopts a stricter view of the statute and imbues "necessary" with a more traditional meaning of critical, essential, or indispensable. In re

Hutton, 45 B.R. 558, 561 (Bankr. D.N.D. 1984); In re Gregory, 39 B.R. 405, 411 (Bankr. M.D. Tenn. 1984); In re Amarex, 30 B.R. 763, 766-767 (Bankr. W.D. Ok. 1983).

20. Creditors moving for relief from stay generally argue that the debtor's plan of reorganization is not feasible or the debtor cannot obtain confirmation of its plan, regardless of whether the plan is feasible. See In re Annicott Excellence, LLC, 258 B.R. at 284. "If no reorganization of the debtor is feasible, then no property of the debtor can be necessary for that end." Resolution Trust Corp. v. Swedeland Development Group Inc., 16 F.552, 567 (3d Cir. 1994). Similarly, if a debtor cannot obtain confirmation of its plan of reorganization, then an effective reorganization is not "in prospect." See id. Unless the proposed plan is patently unconfirmable or clearly unfeasible, the debtor should be permitted to attempt to achieve confirmation. United Savings Ass'n v. Timbers of Inwood Forest Associates Ltd., 484 U.S. at 523, 525.

21. In order for a debtor to satisfy a court that there is a reasonable possibility of a successful reorganization within a reasonable time, a debtor must show that an effective reorganization is "in prospect." See Id. (citing United Savings Ass'n v. Timbers of Inwood Forest Associates Ltd., 484 U.S. 365, 374, 108 S. Ct. 626, 98 L.Ed 2d 740 (1988)). A debtor must do more than merely show that there is conceivably a possibility of reorganization. See Id. (citing United Savings Ass'n v. Timbers of Inwood Forest Associates Ltd., 484 U.S. 365, 375, 108 S. Ct. 626, 98 L.Ed 2d 740 (1988)). A debtor must also make a showing that an effective reorganization is reasonably possible within a reasonable time. See Id. (citing United Savings Ass'n v. Timbers of Inwood Forest Associates Ltd., 484 U.S. 365, 376, 108 S. Ct. 626, 98 L.Ed 2d 740 (1988)).

22. The concept of a reasonable possibility of a successful reorganization within a reasonable time "has different meanings depending on the stage of the proceeding." In re Ashgrove Apartments of DeKalb County, 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990). Thus, assuming the case is in its initial stages prior to the first confirmation hearing, so long as the debtors files a proposed plan that is not patently unconfirmable and begins moving meaningfully to reorganization, §362(d)(2) is not a remedy for the creditor. See In re Creekstone Apartments Associates, L.P., 168 B.R. 639, 643 (Bankr. M.D. Tenn. 1994). "In fact, in the early stages, the relief from stay motion can be denied without the debtor ever filing a proposed plan. The debtor merely must demonstrate a reasonable probability that it can propose a successful plan at some reasonable time in the future." Id.

23. Receiving relief from stay pursuant to §362(d)(3)(A) requires more than a showing that confirmation of a proposed plan is questionable.

> Adjudicating a relief from stay motion under §362(d)(3)(A) is not to be a mini confirmation hearing. At a confirmation hearing, a debtor must prove its entitlement to confirm a plan under 11 U.S.C. §1129 by a preponderance of the evidence, and concerning the plan feasibility requirement of §1129(a)(11) in particular, the debtor must demonstrate that the confirmation of the plan is not 'likely' to be followed by liquidation or the need for further financial reorganization. By comparison, the showing required by a debtor under §362(d)(3)(A) is only that the plan has a reasonable possibility of being confirmed, which is a lesser showing than that required at confirmation … In proving a 'reasonable possibility' of plan confirmation, the stage of the proceeding assists in the showing a debtor must make: 'At a minimum the debtor must show that (1) it is proceeding to propose a plan of reorganization, (2) the proposed or contemplated plan has a realistic chance of being confirmed, and (3) the proposed or contemplated plan is not patently unconfirmable …' In re Windwood Heights, Inc., 385 B.R. 832, 838 (Bankr. N.D. W. Va. 2008) (quoting In re National/Northway Ltd. P'ship, 279 B.R. 17, 24 (Bankr. D. Mass. 2002) (internal citations omitted); see also Farm Credit of Central Florida, ACA v. Polk, 160 B.R. 870, 874 (M.D. Fla. 1993).

24. Although any proposed plan must have a realistic chance of being confirmed, legal questions of first impression relating to confirmation issues should not be decided in the context of a relief from stay proceeding. See In re Northgate Terrace Apartments, Ltd., 126 B.R. 520, 523 (Bankr. S.D. Ohio 1991). In the Northgate, the court noted that at a stay relief hearing, the question is not whether every aspect of the debtor's proposed plan would be sustained over objections at confirmation, but rather, whether there is a reasonable likelihood that the debtor will have the financial means available to obtain confirmation of a plan which is being proposed, subject to permissible pre-confirmation modifications. Id.

### A. The Collateral is Necessary.

25. In the instant case, the Collateral is necessary to the Debtors' reorganization efforts. The Debtors' Plan is premised upon the substantive consolidation and overall management and operation of all of the properties in the portfolio. The Collateral is an indispensable element of the Ocean Waters brand name and operating hotel portfolio.

26. The Palm Plaza and Beachside provide the Debtors with a central foothold in Daytona Beach Shores. These hotels are in a prime location and provide the guests of the other operating hotels of the Debtors beachfront access with hotel amenities.

27. Furthermore, the excess cash-flow from the Palm Plaza and Beachside has historically been used to fund the operating shortfalls of the other properties in the portfolio, and such operating cash-flow will be integral to the Reorganized Debtor.

28. Moreover, the Palm Plaza and Beachside are the primary assets and business of B&G XXIV. Without these two hotels, B&G XXIV would have no business or property

to reorganize. As such, the hotels are necessary for the reorganization of B&G XXIV, as well as all of the Debtors.

### B. There is a reasonable possibility of a successful reorganization within a reasonable time.

29. In the instant case, the Debtors have filed a Plan and Substantive Consolidation Motion. The Debtors have been diligently working with the secured lenders and have reached agreements for the use of cash collateral through May 29, 2009. The exclusivity period is still in place and the Debtors anticipate being at a final evidentiary hearing on the Substantive Consolidation Motion by March 20, 2009.

30. The Court has entered an order compelling the secured lenders and the Debtors to mediation with regard to the Substantive Consolidation Motion and the Plan. The Debtors believe that the issues raised in the Substantive Consolidation Motion and the Plan are likely to be resolved at mediation. Furthermore, some of the secured lenders have already indicated a willingness to support the Substantive Consolidation Motion and the Plan.

31. The Debtors operate an ongoing business which generates relatively stable and significant income. The Palm Plaza and Beachside have not languished due to an absence of guests, but have been performing well given the current state of the national economy. The Debtor filed its initial Plan within the exclusivity period set forth in §1121, and has filed the Exclusivity Motion which is currently scheduled for March 11, 2009. The hearing on the Disclosure Statement is currently scheduled for March 23, 2009. In addition to the rents from the hotels, the Plan provides for secondary funding from Wachovia and potential contributions from the principals.

32. In addition, the Plan's feasibility is also premised upon the substantive consolidation of the Debtors into a single entity. The Eleventh Circuit in <u>Eastgroup Properties v. Southern Motel Ass'n, Ltd.</u>, 935 F. 2d 245, 249 (11th Cir. 1991), stated, "It is agreed that the basic criterion by which to evaluate a proposed substantive consolidation is whether 'the economic prejudice of continued debtor separateness' outweighs 'the economic prejudice of consolidation.'"[1] The Eleventh Circuit adopted the following standard by which to determine whether to grant a motion for substantive consolidation:

> …, the proponent of substantive consolidation must show that (1) there is a substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit … When this showing is made, a presumption arises 'that creditors have not relied solely on the credit of one of the entities involved.' … Once the proponent has made this prima facie case for consolidation, the **burden shifts** to an **objecting creditor to show** that (1) it has **relied on the separate credit of one of the entities to be consolidated**; and (2) it will be **prejudiced by substantive consolidation** … Finally, if an objecting creditor has made this showing, 'the court may order consolidation only if it determines that the demonstrated benefits of consolidation heavily outweigh the harm.' (Emphasis added)(citations omitted). <u>Id</u>.

33. In the instant case, the Debtors can establish a *prima facie* case for substantive consolidation. There is clearly a substantial identity amongst the Debtors: (i) the loan documents and related correspondence all reference the "Ocean Resorts Portfolio;" (ii) B&G XXIV did not exist and did not have any credit in its own name prior to obtaining the loan; (iii) B&G XXIV was created for this transaction and was transferred property for no consideration from the other Debtors and/or principals to purchase the Collateral and close this loan; (iv) in obtaining the loan, the Debtors provided the lender financial statements on

---

[1] In adopting the "modern" or "liberal" trend toward allowing substantive consolidation, the Eleventh Circuit implicitly recognized the widespread use of interrelated corporate structures by subsidiary corporations operating under a parent entity's corporate umbrella for tax and business purposes. <u>Id</u> at 248.

all the properties owned and managed by the Debtors; (v) any payments on the loan from B&G XXIV would have come from the main cash concentration account, which pooled the cash of all the Debtors into one bank account, as such all payments on the loan were essentially made by the various Debtors and/or the principles; and (vii) the Debtors have engaged in numerous inter-company transfers resulting in a net of approximately $63,500,000 in inter-company claims, however these claims cannot be identified with specific particularity (i.e. source, date, amount, purpose, consideration, etc.).

34. Furthermore, Unsecured Creditors, including the deficiency claims of the Secured Lenders, are substantially benefitted by substantive consolidation and the Plan. Because it appears that each of the individual Debtors' secured claims exceed the respective asset value, unsecured creditors, on a micro non-consolidated basis, would receive no recovery. Through consolidation, Debtors project a potential return of at least fifty percent (50%). Substantive consolidation will preserve the operations of the whole, allow an immediate recovery to otherwise valueless unsecured deficiency claims, and enhance the feasibility of payments to secured claims.

35. Morever, the Debtors may amend their Plan prior to the entry of an order of confirmation pursuant to §1127, and the inquiry under §362(d)(2) should "not be restricted to only a consideration of a single method of reorganization but any and all viable and effective methods." See In re Dunes Hotel Associates, 188 B.R. 162, 170 (Bankr. D.S.C. 1995). As such, this Court cannot conclude that any amended Plan proposed by the Debtors would necessarily be patently unconfirmable.

36. GCCFC cannot prove by a preponderance of the evidence that it has the ability to block confirmation. GCCFC cannot demonstrate that the Plan is patently unconfirmable or clearly unfeasible. GCCFC does not have the ability to prevent a "cram-down", as its deficiency claim will not control the Class of General Unsecured Claims under the Plan.

37. These cases are in the early stages and should not be thwarted by GCCFC's attempt to take over operational control of the Palm Plaza and Beachside, without regard to the creditors of the those Debtors or to all the creditors of all of the Debtors.

### III. CONCLUSION: STAY RELIEF SHOULD BE DENIED

38. In conclusion, the Stay Relief Motion should be denied. The Collateral is necessary for an effective reorganization. GCCFC cannot demonstrate that it could block confirmation of any plan of reorganization. Furthermore, due to the early stages of these cases, the Debtors should be afforded the time and opportunity to propose a plan and move meaningfully toward reorganization.

**WHEREFORE**, Bray & Gillespie XXIV, LLC respectfully requests this Court enter an Order denying LNR Partners, Inc. as special servicer for Bank of America, N.A. as successor by merger to LaSalle Bank National Association, as trustee for the registered holders of Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2006-GG7, Commercial Mortgage Pass-Through Certificates, Series 2006-GG7's Motion for Relief from the Automatic Stay, and for such other and further relief as the Court deems just and proper in the circumstances.

**RESPECTFULLY SUBMITTED** this 4th day of March 2009.

/s/ Mariane L. Dorris
Mariane L. Dorris
Florida Bar No. 0173665
mdorris@lseblaw.com
R. Scott Shuker
Florida Bar No. 984469
mdorris@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
390 N. Orange Avenue, Suite 600
P.O. Box 3353 (32802-3353)
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801
Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | CASE NO. 3:08-bk-05473-JAF |
| **BRAY & GILLESPIE MANAGEMENT, LLC, et al** | CHAPTER 11 |
| Debtors | Jointly-Administered with cases no. 3:08-bk-05474 through 3:08-bk-05551 |
| _____/ | |
| **APPLICABLE DEBTOR:** | |
| **BRAY & GILLESPIE XXIV, LLC** | |
| (Case No. 3:08-BK-05528-JAF) | |
| _____/ | |

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the **DEBTOR'S RESPONSE TO GCCFC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY** has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: Mindy A. Mora, Esq., attorney for LNR Partners, Inc., Bilzin Sumberg Baeza Price & Axelrod, L.L.P., 2500 Wachovia Financial Center, 200 South Biscayne Boulevard, Miami, Florida 3313-2385; Bray & Gillespie Management, LLC, Attn: Joseph G. Gillespie, 600 North Atlantic Ave., Daytona Beach, FL 32118; Bruce DelValle, Deputy General Counsel, and Erin Thompson, Associate General Counsel, Ocean Waters Management, 501 North Atlantic Avenue, Daytona Beach, FL 32118; Local Rule 1007-2 parties-in-interest list, as shown on the matrix attached to the original of this motion filed with the Court; and the U.S. Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801 this 4th day of March 2009.

/s/ Mariane L. Dorris
Mariane L. Dorris, Esq.